# 22-2731

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

---

WINSTON HENVILL,

*Plaintiff-Appellant,*

- against -

METROPOLITAN TRANSPORTATION AUTHORITY,

*Defendant-Appellee.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

---

**BRIEF FOR PLAINTIFF-APPELLANT
and
SPECIAL APPENDIX**

WOLIN & WOLIN
By: Alan E. Wolin, Esq.
*Attorney for Plaintiff-Appellant*
33 South Service Road, #189
Jericho, New York 11753
Tel.: (516) 938-1199
Fax: (516) 938-1178
Email: wolinlaw@aol.com

**Table of Contents**

| | Page |
|---|---|
| Table of Authorities | iii |
| Preliminary Statement | 1 |
| Statement of Subject Matter and Appellate Jurisdiction | 2 |
| Statement of the Issues | 3 |
| Statement of the Case | 4 |
| Statement of Facts | 11 |
|    A.  The Command Discipline Related to Overtime | 11 |
|    B.  Removal of Appellant's Summons Writing Responsibility | 13 |
|    C.  Appellant's Termination | 15 |
| Argument | |
|    I.  Standard of Summary Judgment | 21 |
|    II.  Appellant Established a *Prima Facie* Case of Race Discrimination | 23 |
|       A.  The Title VII and NYSHRL Claims | 23 |
|          1.  The Overtime Assignment | 29 |
|          2.  Termination | 30 |
|       B.  The NYCHRL Claim | 34 |

III.    Appellant Established a *Prima Facie* Case of
Retaliation      36

    A.    The Title VII and NYSHRL Claims    36

    B.    The NYCHRL Claim    43

Conclusion    44

Certificate of Compliance    45

# **Table of Authorities**

Page

Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)      21

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)      21

Binder v. Long Island Lighting Co., 933 F.2d 187, 191 (2d Cir. 1991)      24

Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988)      22

Brennan v. Metropolitan Opera Ass'n Inc.,
192 F.3d 310, 317 (2d Cir. 1999)      25

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)      21

Chambers v. TRM Copy Centers Corp., 43 F.3d 36-37 (2d Cir. 1994)      21,25
27,41

Collins v. New York City Transit Auth.,
305 F.3d 113, 118 (2d Cir. 2002)      27

Cronin v. AETNA Life Ins. Co., 46 F.3d 96, 202-203 (2d Cir. 1995)      21

Dister v. Continental Group, Inc., 859 F.2d at 1112      26

Donahue v. Windsor Locks Board of Fire Commissioners,
834 F.2d 54, 57 (2d Cir. 1987)      21

Gallo v. Prudential Residential Services Limited Partnership,
22 F.3d 1219, 1224 (2d Cir. 1994)      22,23

Garcia v. Hartford Police Department,
706 F.3d 120, 126-127 (2d Cir. 2013)      3

Gordon v. NYC Board of Education, 232 F.3d 111, 116 (2d Cir. 2000)      39

Page

Grady v. Affiliated Cent. Inc., 130 F.3d 553, 560 (2d Cir. 1997)        26

Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000)        28,32
33

Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 52 (2d Cir. 1998)        24

Henry v. Wyeth Pharms., Inc., 616 F.3d 134, 149-150 (2d Cir. 2010)        28

Jute v. Hamilton Sundstrand Corp., 420 F.3d 166,1 73 (2d Cir. 2005)        36

Loeffler v. Staten Island University Hospital,
502 F.3d 268, 278 (2d Cir. 2009)        34,35

Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003)        28

McDonnell Douglas v. Green, 411 US 792, 802-804 (1973)        24,36

McMenemy v. City of Rochester, 241 F.3d 279, 282-83 (2d Cir. 2001)        36

Meiri v. Dacon,
759 F.2d 989, 998 (2d Cir.) cert. denied, 474 U.S. 829 (1985)        22

Mihalik v. Credit Agricole Cheuvreux North America, Incorporated,
715 F.3d 102, 110 (2d Cir. 2013)        35

Montana v. First Fed. Sav. & Loan Ass'n, 869 F.2d 100, 103 (2d Cir. 1989)  22

Patane v. Clark, 508 F.3d 106 (2d Cir. 2007)        38,39

Ramseur v. Chase Manhattan Bank, 865 F.2d at 464        26

Raniola v. Bratton, 243 F.3 610, 625 (2d Cir. 2001)        40

Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1178 (2d Cir. 1996)        39

Page

Reeves v. Sanderson Plumbing Products, Inc.,
530 U.S. 133, 140-141 (2000)                                    25,26

Robinson v. Time Warner Inc., 92 F.Supp.2d 318, 330 (SDNY 2000)    41

Rosen v. Thornburgh, 928 F.2d at 533                               26

Schnabel v. Abramson, 232 F.3d 83, 90-91 (2d Cir. 2000)            26

Shumay v. UPS, Inc., 199 F.3d 60, 63 (2d Cir. 1997)               32

St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993)        25

Texas Dep't. of Community Affairs v. Burdine,
450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)          24,41

Thornburgh v. Columbus & Greenville Railroad Co.,
760 F.2d 633, 638 (5th Cir. 1985)                                 26

Tomassi v. Insignia Fin. Group, Inc.,
478 F3d 111, 115-116 (2d Cir. 2007)                               28

United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)          22

VanZant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996)  26

Velazco v. Columbus Citizens Foundation, 778 F.3d 409 (2d Cir. 2015)  35

Windham v. Time Warner, Inc., 275 F.3d 179, 180 (2d Cir. 2001)    27

Zann Kwan v. Andalex Group, 737 F.3d 834 (2d Cir. 2013)          39

## <u>PRELIMINARY STATEMENT</u>

The Judgment dated and entered September 28, 2022 [J.A. 794, S.A. 13][1], appealed from herein, was entered in favor of Defendant-Appellee ("Appellee") and against Plaintiff-Appellant ("Appellant").

The Judgment followed the Memorandum Decision and Order issued by the Honorable George B. Daniels, United States District Judge, dated September 26, 2022. [J.A. 782-793, S.A. 1-12]   The Judgment granted Appellee's motion for summary judgment with respect to all claims.

Appellant is unaware whether any portion of the Memorandum Decision and Order and/or the Judgment appealed from were reported.

---

[1] J.A. denotes reference to Joint Appendix and S.A. denotes reference to Special Appendix.

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

Appellant hereby appeals, pursuant to 28 U.S.C. § 1291, from Judgment of the United States District Court for the Southern District of New York entered on September 28, 2022. [J.A. 794, S.A. 13]

The Judgment, appealed from, was entered in favor of Appellee and against Appellant.

The Judgment, *inter alia*, granted Appellee's motion for summary judgment on all claims and closed the case.

Appellant duly filed a Notice of Appeal on October 21, 2022. [J.A. 795]

## **STATEMENT OF THE ISSUES**

1.  Whether summary judgment is appropriate with respect to Appellant's Title VII race-based discrimination claim?

2.  Whether summary judgment is appropriate with respect to Appellant's Title VII retaliation claim?

3.  Whether summary judgment is appropriate with respect to Appellant's NYS Human RightsLaw race-based discrimination claim?

4.  Whether summary judgment is appropriate with respect to Appellant's NYS Human Rights Law retaliation claim?

5.  Whether summary judgment is appropriate with respect to Appellant's NYC Human Rights Law race-based discrimination claim?

6.  Whether summary judgment is appropriate with respect to Appellant's NYC Human Rights Law retaliation claim?

The court considers these issues *de novo*, while "resolv[ing] all ambiguities and draw[ing] all inferences against the moving party."  Garcia v. Hartford Police Department, 706 F.3d 120, 126-127 (2d Cir. 2013) (per curiam).

## STATEMENT OF THE CASE

The Metropolitan Transportation Authority ("MTA" or "Appellee") is a New York State public benefit corporation and maintains a Police Department ("MTAPD"). Pub. Auth. Law §§ 1263-64, 1266-h.

On or about January 11, 2012, Appellant, a Black Police Officer employed by the MTA, filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (the "EEOC") against Appellee alleging discrimination based on his race and color. [J.A. 63-64] In his Charge of Discrimination, Appellant alleged, *inter alia*, that on November 9, 2011 he received a "Command Discipline" because he had allegedly accepted two tours of overtime on the same day in different commands. [J.A. 63-64] In his Charge, Appellant named, among others, John D'Agostino, Deputy Chief - Support Services, and Kevin Kieran, Captain, as individuals who had committed discrimination and a hostile work environment against him. [J.A. 63-64]

On or about May 5, 2012, Appellant filed a supplemental Charge of Discrimination with the EEOC alleging discrimination based on his race and color, as well retaliation based on the January 11, 2012 Charge of Discrimination he filed with the EEOC. [J.A. 68-69] In his Supplemental Charge of Discrimination, Appellant alleged, *inter alia*, that on March 12, 2012 Lt. Yasso advised him that, until

further notice, he could not issue summonses. This prohibition, said Appellant, was "highly irregular and was done at the direction of Captain Kieran." [J.A. 169] Appellant named, among others, Deputy Chief D'Agostino and Captain Kieran as individuals who had discriminated and created a hostile work environment against him.

On or about January 10, 2012, Appellant also caused a Notice of Claim to be served pursuant to applicable statute, wherein he gave Appellee and others notice of his claim. [J.A. 566-573] Among others, Appellant directed the Notice of Claim to Deputy Chief D'Agostino and Captain Kieran. A copy of the Notice of Claim was mailed by certified mail, return receipt requested to Deputy Chief D'Agostino and Captain Kieran, both at the MTA, 347 Madison Avenue, New York, New York 10017. [J.A. 566-573]

In his Notice of Claim, Appellant identified Deputy Chief D'Agostino and Captain Kieran as individuals who had discriminated against him and created a hostile work environment. [J.A. 566-573] Appellant alleged that on November 9, 2011, he had received a Command Discipline because he had allegedly accepted two tours of overtime on the same day in different commands. [J.A. 566-573]

On or about May 7, 2012, Appellant caused a Supplemental Notice of Claim to be served pursuant to applicable statute, wherein he gave Appellee and others

notice of his claims. [J.A. 574-579] Among others, Appellant directed the Supplemental Notice of Claim to Deputy Chief D'Agostino and Captain Kieran. A copy of the Supplemental Notice of Claim was mailed to Deputy Chief D'Agostino and Captain Kieran by certified mail, return receipt requested at the MTA, 347 Madison Avenue, New York, New York 10017. [J.A. 574-579]

In the Supplemental Notice of Claim, Appellant identified Deputy Chief D'Agostino and Captain Kieran as individuals who had discriminated and retaliated against him and created a hostile work environment. [J.A. 574-579] In the Supplemental Notice of Claim, Appellant alleged that on March 12, 2012, Lt. Yasso advised him that until further notice, he could not issue summonses. He alleged that this prohibition was "highly irregular" and "done at the direction of Captain Kieran." [J.A. 574-579]

On July 29, 2013, the U.S. Department of Justice, Civil Rights Division, issued a Notice of Right to Sue to Appellant with reference to his Charges of Discrimination. Said notice advised Appellant of his right to file an action in the appropriate federal court within ninety (90) days of his receipt thereof. [J.A. 69]

On October 24, 2013, Appellant filed a Verified Complaint with the United States District Court for the Southern District of New York (the "District Court") against Appellee and nine individual defendants (the "Individual Defendants") (the

"District Court Complaint"). [J.A. 82-99]

In the District Court Complaint, Appellant alleged claims of race-based discrimination, retaliation, hostile work environment, and retaliatory hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended, the New York State Human Rights Law (the "NYSHRL"), the New York City Human Rights Law (the "NYCHRL"), and 42 U.S.C. §§ 1981 and 1983. [J.A. 82-99]

On July 9, 2014, the Hon. George B. Daniels, U.S.D.J., granted the Individual Defendants and the MTA's motion to dismiss and permitted Appellant to request leave to amend the District Court Complaint. [J.A. 100-156]

On August 7, 2014, Appellant filed a Notice of Appeal from the dismissal of the District Court Complaint. [J.A. 157-159]

On August 11, 2014, Appellant requested leave to amend the District Court Complaint and included in support of this request a proposed amended complaint that named the MTA as the sole defendant and only asserted claims under Title VII, the NYSHRL and the NYCHRL. [J.A. 160-179]

On October 10, 2014, the Hon. George B. Daniels, U.S.D.J., denied Appellant's request for leave to amend the District Court Complaint and dismissed Appellant's Title VII claims. [J.A. 180-188] Although the District Court dismissed Appellant's Title VII claims for race-based discrimination, hostile work environment,

retaliation, and retaliatory hostile work environment, the District Court declined to exercise supplemental jurisdiction over Henvill's remaining claims under the NYSHRL and the NYCHRL. [J.A. 180-188]

On November 14, 2014, Appellant appealed from the District Court's July 9, 2014 judgment granting the Individual Defendants and the MTA's motion to dismiss, as well as the District Court's October 10, 2014 judgment denying Appellant's request for leave to amend the Initial District Court Complaint.

On May 11, 2015, the Second Circuit issued a Summary Order affirming the District Court's July 9, 2014 judgment, affirming, in part, and vacating, in part, the District Court's October 10, 2014 judgment, and remanding the matter to the District Court "for further proceedings consistent with [the Summary Order]." [J.A. 206-210]

With respect to the portion of the District Court's October 10, 2014 judgment that the Second Circuit vacated, the Second Circuit stated that:

> the District Court erred in denying Henvill's request for leave to amend as it pertained to the race-based discrimination claim regarding the command discipline issued by Lee Dittrich and the retaliation claim regarding the removal of Henvill's summons issuing responsibilities. [J.A. 254]

On July 17, 2015, Appellant filed an Amended Verified Complaint in the District Court (the "District Court Amended Complaint"). [J.A. 229-241]  In the

District Court Amended Complaint, Appellant interposed Title VII race-based and retaliation claims related to his April 2015 termination and alleged the facts that the Second Circuit held were sufficient to support Appellant's claims under Title VII: (1) Appellant's race-based discrimination claim regarding a command discipline issued by Lee Dittrich related to Appellant accepting two tours of overtime on the same day in different commands; and (2) Appellant's retaliation claim regarding the removal of his summons-issuing responsibilities. [J.A. 206-210; 229-241]

On November 29, 2017, Appellant filed a Second Amended Verified Complaint in the District Court. [J.A. 65-81] In the District Court Second Amended Complaint, Appellant alleged Title VII, NYSHRL, and NYCHRL race-based and retaliation claims related to his termination. [J.A. 65-81] In addition, in the District Court Second Amended Complaint, Appellant alleged claims under Title VII, NYSHRL, and NYCHRL based upon the facts that the Second Circuit held were sufficient to support Appellant's claims under Title VII, namely: (1) Appellant's race-based discrimination claim regarding a command discipline issued by Lee Dittrich related to Appellant accepting two tours of overtime on the same day in different commands; and (2) Appellant's retaliation claim regarding the removal of his summons-issuing responsibilities. [J.A. 70-71]

On December 13, 2017, Defendant filed an Answer to the District Court

Second Amended Complaint. [J.A. 275-288]

The only claims to be considered in connection with this action are those set forth in the District Court Second Amended Complaint, namely:

    a.  Appellant's Title VII, NYSHRL, and NYCHRL race discrimination claim regarding the command discipline issued by Lee Dittrich related to Appellant accepting two tours of overtime in different commands on the same day;

    b.  Appellant's Title VII, NYSHRL, and NYCHRL retaliation claim regarding removal of Appellant's summons-issuing responsibilities; and

    c.  Appellant's Title VII, NYSHRL, and NYCHRL race and retaliation claims related to his termination. [J.A. 65-81]

After discovery was completed, Appellee moved for summary judgment. [J.A.53-534, 715-733] Appellant duly opposed the motion.[J.A. 535-714]

In a Memorandum Decision and Order dated September 26, 2022, the Honorable George B. Daniels, U.S.D.J., granted Appellee's motion for summary judgment. [J.A. 782-793, S.A. 1-12]

Believing that the lower court had erred, Appellant caused a Notice of Appeal to be filed on October 21, 2022. [J.A. 795] This appeal follows.

## <u>STATEMENT OF FACTS</u>

Appellant hereby recites what he perceives to be the material facts herein. These facts are taken from Appellant's response to Appellee's Rule 56.1 Statement. [J.A. 535-563] Many of these facts are sufficiently in dispute.

Appellee is a New York State Public Benefit Corporation and maintains a Police Department. Appellant was hired to work in the MTA's Police Department.

We shall now address each claim in this case.

**A.** **<u>The Command Discipline Related to Overtime</u>**

On or about September 7, 2011, Appellant received a Command Discipline for accepting two tours of overtime for the same date in different districts. [J.A. 316-318; 432] On or about November 9, 2011, Appellant received a revised Command Discipline related to his conduct of accepting two tours of overtime in different commands on the same day. [J.A. 70; 321-322; 434]

Appellant did not accept two tours of overtime on the same day in different commands intentionally. [J.A. 583] Appellant unknowingly took two overtime tours in two different locations. [J.A. 584] When Appellant accepted the second tour of overtime, he did not remember that he had already accepted an earlier overtime. [J.A. 585-586]

The Command Discipline that Appellant received was excessive. Appellant

is not the only one who accepted two tours of overtime on the same day in different commands. Nothing happened to the others. [J.A. 587-588] Appellant had never before failed to report for an overtime assignment. [J.A. 594] Appellant was singled out and targeted when he received the Command Discipline. [J.A. 589]When Lt. Dittrich told Appellant that he was going to be disciplined, he told him that he "had a target on his back." [J.A. 608]

Other officers committed overtime infractions, including not appearing for an overtime assignment; doing an overtime assignment when not supposed to; taking an overtime assignment when not eligible or appearing late for an overtime assignment. [J.A. 590-591] Caucasian officers have committed the same or similar overtime violations, such as not appearing for an overtime assignment, taking an overtime assignment when not supposed to; taking an overtime assignment when not eligible; or appearing late for an overtime assignment. [J.A. 592-593]

Caucasian officers Torone, Doscher, Scheck and Pfeiffer are some who committed analogous overtime infractions and who were not disciplined. [J.A. 595] For example, Officer Torone took overtime in District #3-Flatbush and did not appear for the assignment in or about 2010. [J.A. 595-596] Officer Doscher did not come in or came in for his assignment and left early. This occurred more than once in or about 2009. Officer Doscher had other disciplinary issues as well. [J.A. 597-602]

-12-

Officer Scheck took overtime in District 3 in 2009 and did not appear. [J.A. 602-603]

Officer Pfeiffer did not appear or appeared and left early. [J.A. 603-604]  There are

other Caucasian officers who also committed overtime violations, including Lt.

Zaino, Sgt. Ho and Sgt. Reimer. [J.A. 605-607]

Lt. Dittrich knows of incidents where police officers failed to appear for

overtime assignments.  He was not aware of any specific discipline related to it. [J.A.

658]  According to Internal Affairs, someone failing to appear for an overtime

assignment should be disciplined. [J.A. 673-679]  According to Lt. Pontorno, an

MTA police officer should be disciplined if he/she "intentionally accepted two tours

of overtime on the same day in different commands."[J.A. 678]  The circumstances

under which an officer accepts two tours of overtime on the same day in different

commands is analogous to not appearing for an overtime assignment.  The result is

the same.  The post is left not staffed and someone else is deprived of the opportunity.

[J.A. 593]

**B.** **Removal of Appellant's Summons Writing Responsibility**

On March 12, 2012, Lt. Yasso, at the direction of Captain Kieran, advised

Appellant that, until further notice, he could not issue summonses. [J.A. 609-610;

686]  Captain Kieran was the Commanding Officer of District 3, to which Appellant

was assigned at the time. [J.A. 611; 685]   Captain Kieran had knowledge of

-13-

Appellant's protected activities. [J.A. 617-618]

The removal of Appellant's summons issuing authority occurred approximately two months after Appellant filed an EEOC Charge and served a Notice of Claim in which he named Captain Kieran. The reason that Appellant was given for this action was that he had "misplaced one summons." [J.A. 612; 616] Appellant was not told that his history related to summonses was a factor. [J.A. 616]

When Captain Kieran instructed Lt. Yasso to collect Appellant's summonses, Captain Kieran did not indicate why he was instructing as such. [J.A. 686] Appellant did not have prior issues with writing summonses. [J.A. 612-613] The act of taking the summonses stopped Appellant's ability to write summonses. [J.A. 687]

In 2008 and 2009, Appellant issued the most summonses in the entire MTAPD. He was making other officers look bad. [J.A. 614] The removal of Appellant's summons issuing authority was inconsistent with Captain Kieran's previous pronouncement that he wanted summons productivity to increase. He told that to Appellant. [J.A. 618-619]

Appellant is not aware of any other officer whose summons issuing responsibility was taken by the MTAPD. [J.A. 614-615] Lt. Yasso was not aware of any other police officer whose ability to write summonses was stopped. [J.A. 687] There are police officers who abused their summons issuing authority and who were

-14-

not disciplined or had their summons issuing authority taken away. [J.A. 615-616]

The MTA notified Lt. Yasso in the beginning of 2011 that he was added to Appellant's lawsuit. [J.A. 688-690] At the time, another supervisor told Lt. Yasso that "every supervisor there is on the lawsuit and since I'm not a supervisor there, I'm added." [J.A. 690]

## C. **Appellant's Termination**

On April 19, 2013, Appellant took possession of another officer's memo book, that was left on top of a gun locker and then locked the memo book inside of a gun locker. [J.A. 366-367] A memo book is a notebook provided to all MTAPD Police Officers and other members of the MTAPD to record all police activity, including traffic stops and summonses.

Subsequently, on April 26, 2013, Sgt. James Sokira asked Appellant if Appellant had found Sgt. Sokira's missing memo book and Appellant informed Sgt. Sokira that he had not seen Sgt. Sokira's memo book. [J.A. 367-368] Appellant did not say anything to Sgt. Sokira about the memo book. [J.A. 368-371]

The MTA's Internal Affairs Bureau ("IAB") conducted an investigation related to the whereabouts of Sgt. Sokira's memo book. [J.A. 409-411] Following IAB's investigation, the MTA issued a Notice of Intent to Discipline to Appellant. [J.A. 71; 412-413; 449-450]

-15-

Following the issuance of the June 17, 2013 Notice of Intent to Discipline to Appellant, the matter was submitted to arbitration pursuant to the terms of the applicable Collective Bargaining Agreement ("CBA") between the MTA and the Police Benevolent Association of the Metropolitan Transportation Authority (the "PBA"). [J.A. 72; 452-460]

On April 25, 2015, following a binding arbitration that was held pursuant to the CBA between the MTA and the PBA, the arbitrator, Martin F. Scheinman, Esq., determined that the MTA had just cause to terminate Appellant's employment as a result of Appellant's actions on April 19, 2013, April 26, 2013, and June 3, 2013 related to the disappearance of Sgt. Sokira's memo book. [J.A. 462-481]

With reference to the issue that led to his termination, Appellant did take possession of a memo book and placed it inside a wall mounted gun locker. [J.A. 620] Sgt. Sokira asked Appellant, some days later, if he had seen his memo book. However, Appellant did not think that the memo book he had found belonged to Sgt. Sokira. [J.A. 621] When Appellant found the memo book on April 19, 2013, he looked to see if there were any identifying markings on it. Appellant did not see any identifying markings. The procedure is that when one is issued a memo book, one places the name and other identifying information on the cover. Appellant looked through the memo book and did not see any identifying information. [J.A. 621-622]

-16-

Appellant had no idea whose memo book it was. [J.A. 623] It never crossed his mind that the memo book belonged to Sgt. Sokira. [J.A. 625]

Appellant placed the memo book in the locker and did not talk to a supervisor because he wanted to avoid getting an officer in trouble for misplacing the memo book. [J.A. 624] At the time, Appellant recalled placing a memo book inside a gun locker. He did not know that it was Sgt. Sokira's. [J.A. 627-628] Appellant, truthfully, told the Office of Internal Affairs that he had no recollection of placing Sgt. Sokira's memo book inside the gun locker. [J.A. 625-627] Appellant was truthful with the Internal Affairs investigation. [J.A. 629]

Lt. Pontorno, the Internal Affairs Investigating Officer, stated that Appellant was interviewed twice. His answers were consistent. [J.A. 661] Appellant said, during the interviews, that he found a memo book in the room off the front desk; he did not know whose it was, he put the book in the gun locker, and he did not ascertain whose it was. He denied to Sgt. Sokira that he found the Sergeant's book. [J.A.661] Appellant never denied having taken possession of the memo book and placing it in the locker. [J.A. 661-662] During the investigation, Appellant stated that there were no identifying markings on the memo book as to ownership. [J.A. 663] According to procedure, the person whose book it is has to put his/her name on the front with Shield Number. [J.A. 663]

-17-

Deputy Chief D'Agostino was present during the Internal Affairs interview of Appellant. According to Deputy Chief D'Agostino, Appellant never denied taking possession of the memo book, which was situated on top of the gun locker. He never denied placing the memo book in the locker and stated that he did so for safekeeping. [J.A. 694] Deputy Chief D'Agostino was the Commanding Officer of the MTAPD's Internal Affairs. As the Commanding Officer of Internal Affairs, it was his function to determine what allegations would be investigated. [J.A. 693] Deputy Chief D'Agostino made the decision to initiate the investigation against Appellant. [J.A. 693] Deputy Chief D'Agostino made the decision to serve Appellant with the Notice of Intent to Discipline. [J.A. 665-666] Deputy Chief D'Agostino made the determination to issue the Notice of Intent to Discipline and to recommend discipline against Appellant. [J.A. 695] Deputy Chief D'Agostino thought that there was nothing inappropriate with Appellant placing the memo book inside the gun locker after he found it. [J.A. 694]

It is a rare occurrence for an MTA police officer to be terminated. [J.A. 696] It is rare for an MTA police officer to be terminated for disciplinary reasons. [J.A. 667] Appellant disagreed with the decision to terminate him. [J.A. 654-655]

Internal Affairs did not ask Sgt. Sokira if he had placed his name and shield number on the front of the memo book. Sgt. Sokira was not disciplined for anything

-18-

having to do with the memo book, including leaving it unattended and failing to place his name on it. [J.A. 663-664]

Caucasian police officers who have not engaged in protected activity and who have committed far more egregious acts than that which Appellant was accused of have not been terminated, including Captain Fitzpatrick, Officer Gentile, Officer Doscher, Officer Buehler, Officer Stallone, Sgt. Smith, Officer Lucchessi, Officer LeBlanc, Officer David, Officer Domingo and Officer Chadderton. [J.A. 630-632; 635-651; 652-653; 668-673; 706-707]  There have been Caucasian MTA officers arrested who have not been dismissed. [J.A. 582]

Deputy Chief D'Agostino, as Commanding Officer of Internal Affairs, had knowledge of MTA police officers being arrested. [J.A. .701-703] One non-African American officer was arrested and convicted after being accused of using excessive force.  He was not terminated. [J.A. 704-705]   There have been Caucasian MTA police officers caught sleeping on duty who have not been terminated.  Sleeping on duty in the MTAPD is a serious matter.  A police officer should be disciplined for sleeping on duty. [J.A. 673-674;699]  There are photographs of officers sleeping on duty. [J.A. 708-714]   During the years that Deputy Chief D'Agostino was Commanding Officer of Internal Affairs, police officers were accused of sleeping on duty.  None were terminated. [J.A. 699-700]

Caucasian police officers in the MTAPD have been involved in domestic incidents and not terminated. [J.A. 680-682] Deputy Chief D'Agostino could not recall any MTA police officer being terminated as a result of an allegation of domestic violence. [J.A. 700-701]

Appellant was not offered a last chance agreement, as other officers were, whereby the officer accepts a penalty and agrees that if there is any similar misconduct or serious misconduct within a stipulated time, he/she would be dismissed. [J.A. 698] Caucasian officers have been offered a last chance agreement. [J.A. 697-698]

Deputy Chief D'Agostino signed Appellant's termination letter. [J.A. 483]

# ARGUMENT

## I. Standard for Summary Judgment

This court has enunciated the standard for summary judgment many times. *See, e.g.,* Cronin v. AETNA Life Ins. Co., 46 F.3d 96, 202-203 (2d Cir. 1995) and Chambers v. TRM Copy Centers Corp., 43 F.3d 36-37 (2d Cir. 1994). Under this standard, a motion for summary judgment may not be granted unless the court determines that there are no genuine issues of material fact to be tried and that the facts, as to which there is no such issue, warrant judgment for the moving party as a matter of law. *See, e.g.*, Fed.R.Civ.P. 56[c]; *see generally,* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment, *see e.g.,* Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970), and in assessing the record to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought, *see, e.g.,* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Board of Fire Commissioners, 834 F.2d 54, 57 (2d Cir. 1987). The inferences to be drawn from the underlying facts, revealed in materials such as affidavits, exhibits, interrogatory answers and depositions, must be viewed in the light most favorable to the party opposing the motion. *See, e.g.,*

-21-

United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam).

On a motion for summary judgment, a court "cannot try issues of fact; it can only determine whether there are issues to be tried." Donohue v. Windsor Locks Board of Fire Commissioners, supra. at 58; see also, Gallo v. Prudential Residential Services Limited Partnership, 22 F.3d 1219, 1224 (2d Cir. 1994). If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party, summary judgment is improper. See, e.g., Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988).

The inferences to be drawn against the moving party are even stronger in discrimination cases. The court held, in Gallo, supra. at 1224, that "When deciding whether summary judgment should be granted in a discrimination case, additional considerations should be taken into account. A trial court must be cautious about granting summary judgment to an employer when, as here, its intent is at issue" and where direct evidence of an employer's discriminatory/retaliatory intent will rarely be found. Montana v. First Fed. Sav. & Loan Ass'n, 869 F.2d 100, 103 (2d Cir. 1989); Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.) cert. denied, 474 U.S. 829 (1985).

The Court in Gallo, supra., continued:

"Because writings directly supporting a claim of

-22-

intentional discrimination are rarely, if ever, found among an employer's corporate papers, affidavits and depositions must be carefully scrutinized for circumstantial proof, which, if believed, would show discrimination." <u>Gallo</u> at 1224.

Thus, a court should not grant an employer's motion for summary judgment unless "the evidence of discriminatory intent is so slight that no rational jury could find in the plaintiff's favor." <u>Id</u>. at 1226.

An application of these principles to the record herein indicates that summary judgment is not appropriate.

## II. APPELLANT ESTABLISHED A *PRIMA FACIE* <u>CASE OF RACE DISCRIMINATION</u>

Appellant's First, Third and Fifth causes of action allege that Appellee discriminated against him on the basis of his race in violation of Title VII, the NYSHRL and the NYCHRL, respectively. We will remember that the race discrimination claim, as it finally stood, alleged that Appellee 1) issued the Command Discipline to Appellant for accepting two tours of overtime in different commands on the same day, and 2) issued the Notice of Intent to Discipline in June 2013, which ultimately led to Appellant's termination in April 2015.

### A. The Title VII and NYSHRL Claims

Appellant's Title VII and NYSHRL claims are analyzed under the burden

shifting analysis set forth in McDonnell Douglas v. Green, 411 US 792, 802-804

(1973). The Supreme Court set forth the standards to be applied in Texas Department

of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981) (citing McDonnell

Douglas v. Green, 411 U.S. 792, 802-804 (1973).

    In Burdine, the court held:

> First, the plaintiff has the burden of proving, by a
> preponderance of the evidence, a *prima facie* case of
> discrimination. Second, if the plaintiff succeeds in proving
> the *prima facie* case, the burden shifts to the defendant 'to
> articulate some legitimate, non-discriminatory reason for
> the employee's rejection.' Third, should the defendant
> carry this burden, the plaintiff must then have an
> opportunity to prove, by a preponderance of the evidence,
> that the legitimate reasons offered by the defendant were
> not its true reason, but were a pretext for discrimination.

    By establishing a *prima facie* case, Appellant "creates a presumption that the

employer unlawfully [discriminated] against the employee." Burdine, supra. at 254.

Making out a *prima facie* case "is not a demanding burden." Greenway v. Buffalo

Hilton Hotel, 143 F.3d 47, 52 (2d Cir. 1998). If a plaintiff successfully establishes

a *prima facie* case, the burden then shifts to the defendant "to articulate some

legitimate, non-[discriminatory] reason for the employer's [action]" McDonnell

Douglas, supra. at 802. This reason must be "clear and reasonably specific." Binder

v. Long Island Lighting Co., 933 F.2d 187, 191 (2d Cir. 1991). Once this reason is

-24-

established, the presumption of discrimination arising with the establishment of the *prima facie* case drops from the matter. <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 511 (1993).

Appellant must then show that the reason offered by Appellee is a pretext for discrimination. <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 140-141 (2000); <u>Brennan v. Metropolitan Opera Ass'n Inc.</u>, 192 F.3d 310, 317 (2d Cir. 1999) Appellant's final burden of showing pretext may be satisfied either by the introduction of additional evidence or by reliance on the evidence submitted in support of the *prima facie* case of discrimination. In other words, Appellant must show that discrimination was the real reason for the employment action.

The evidentiary burden on Appellant, in establishing a *prima facie* case, is "minimal." <u>Chambers v. TRM Copy Centers Corp.</u>, 43 F.3d 29, 37 (2d Cir. 1994) (describing the burden as "de minimis"). To make the required showing, Appellant does not have to rely on direct evidence of what Appellee did and said, but more often than not, must depend on the cumulative weight of circumstantial evidence to sufficiently establish a *prima facie* case.

In assessing the inferences that may be drawn in a discrimination action, the court, in <u>Chambers</u>, <u>supra</u>. at 37, noted:

> [T]he court must be alert to the fact that "'[e]mployers are

-25-

rarely so cooperative as to include a notation in the personnel file'" that their actions are motivated by factors expressly forbidden by law. <u>Ramseur v. Chase Manhattan Bank</u>, 865 F.2d at 464 (quoting <u>Thornburgh v. Columbus & Greenville Railroad Co.</u>, 760 F.2d 633, 638 (5th Cir. 1985)); *see also,* <u>Dister v. Continental Group, Inc.</u>, 859 F.2d at 1112 (In "reality ... direct evidence of discrimination is difficult to find precisely because its practitioners deliberately try to hide it. Employers of a mind to act contrary to law seldom note such a motive in their employee's personnel dossier. Because an employer who discriminates is unlikely to leave a "smoking gun" attesting to a discriminatory intent, a victim of discrimination is seldom able to prove his claim by direct evidence, and is usually constrained to rely on circumstantial evidence. *See, e.g.,* <u>Rosen v. Thornburgh</u>, 928 F.2d at 533.

To avoid summary judgment, Appellant's evidence must be "sufficient to support a rational finding that the legitimate, non-[discriminatory] reason proffered by the defendant was false, and that more likely than not discrimination was the real reason for the action taken." <u>VanZant v. KLM Royal Dutch Airlines</u>, 80 F.3d 708, 714 (2d Cir. 1996). The determination of whether summary judgment is appropriate is case-specific. The court must examine the entire record to determine whether the Appellant "could satisfy the ultimate burden of persuading a trier of fact that the defendant intentionally [discriminated] against plaintiff." <u>Schnabel v. Abramson</u>, 232 F.3d 83, 90-91 (2d Cir. 2000), *quoting* <u>Reeves</u>, <u>supra</u>. at 143. Appellant need not prove pretext on a summary judgment motion. <u>Grady v. Affiliated Cent. Inc.</u>, 130

-26-

F.3d 553, 560 (2d Cir. 1997). Appellant met this standard and there are disputed issues of genuine and material fact with respect to the discrimination claims.

Under Title VII and the NYSHRL, to establish a *prima facie* case of discrimination on his federal and state claims, Appellant must show that (1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment action; and (4) such adverse employment action occurred under circumstances giving rise to an inference of discrimination. Collins v. New York City Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002)

The fourth element may be inferred from criticisms of Appellant's performance, invidious or ethnically degrading terms, invidious comments about others in Appellant's protected group, or the sequence of events leading to the negative employment action. Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994). Moreover, showing the employer proffered a legitimate explanation for its actions that is not worthy of belief is another "form of circumstantial evidence that is probative of intentional discrimination; and it may be quite persuasive." Windham v. Time Warner, Inc., 275 F.3d 179, 180 (2d Cir. 2001).

Moreover, a plaintiff may also allege, as Appellant does here, a claim of disparate treatment to sustain his discrimination claims. "A showing of disparate treatment – that is, a showing that the employer treated Appellant 'less favorably than

-27-

a similarly situated employee outside his/her protected group' – is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case." Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003) (quoting Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000)).

Verbal comments can serve as evidence of discriminatory motivation when a plaintiff shows a nexus between the discriminatory remarks and the employment action at issue. Henry v. Wyeth Pharms., Inc., 616 F.3d 134, 149-150 (2d Cir. 2010); Tomassi v. Insignia Fin. Group, Inc., 478 F3d 111, 115-116 (2d Cir. 2007)

In the instant case, the lower court concluded that Appellant's federal and state discrimination claims fail "because [Appellant] has not raised any inference of discrimination. [J.A. 788, S.A. 7] In doing so, the lower court noted that "Here, [Appellant] attempts to raise an inference of discrimination by comparing his treatment to that of other MTA employees." [J.A. 789, S.A. 8] The lower court rejected Appellant's efforts to establish a *prima facie* case, at least in part, through comparator evidence.

The lower court held that Appellant did not sufficiently establish that he was similarly situated to coworkers "who either failed to appear for an overtime shift or appeared late," or those who had engaged in misconduct without being terminated. The lower court opined that Appellant, to support his comparator argument, relied

upon "his own deposition testimony" and his "unfounded belief," which "is insufficient to create a genuine issue of material fact." [J.A. 790, S.A. 9] Appellant respectfully disagrees with the lower court's conclusion and submits that this Court, upon its *de novo* review, should conclude that there was sufficient evidence of an inference, including comparator evidence, and that Appellant did not solely rely upon his own "unsupported belief."

The record reveals that Appellant's claim was supported by more than his "unsupported belief." It was even supported by Appellee's own deposition testimony.

### 1.     <u>The Overtime Assignment</u>

Other officers committed overtime infractions, including not appearing for an overtime assignment; doing an overtime assignment when not supposed to; taking an overtime assignment when not eligible or appearing late for an overtime assignment. [J.A. 590-591]

Caucasian officers have committed the same or similar overtime violations, such as not appearing for an overtime assignment, taking an overtime assignment when not supposed to; taking an overtime assignment when not eligible; or appearing late for an overtime assignment. [J.A. 592-593] Caucasian officers Torone, Doscher, Scheck and Pfeiffer are some who committed analogous overtime infractions and who were not disciplined. [ J.A. 595]  For example, Officer Torone took overtime in

-29-

District #3-Flatbush and did not appear for the assignment in or about 2010. [J.A. 595-596] Officer Doscher did not come in or came in for his assignment and left early. This occurred more than once in or about 2009. Officer Doscher had other disciplinary issues as well. [J.A. 597-602] Officer Scheck took overtime in District 3 in 2009 and did not appear. [J.A. 602-604] Officer Pfeiffer did not appear or appeared and left early. [J.a. 603-604] There are other Caucasian officers who also committed overtime violations, including Lt. Zaino, Sgt. Ho and Sgt. Reimer. [J.A. 605-607]

Lt. Dittrich knows of incidents where police officers failed to appear for overtime assignments. He was not aware of any specific discipline related to it. [J.A. 658] According to Internal Affairs, someone failing to appear for an overtime assignment should be disciplined. [J.A. 675-679]

## 2. **Termination**

Caucasian police officers who have not engaged in protected activity and who have committed far more egregious acts than that which Appellant was accused of have not been terminated, including Captain Fitzpatrick, Officer Gentile, Officer Doscher, Officer Buehler, Officer Stallone, Sgt. Smith, Officer Lucchessi, Officer LeBlanc, Officer David, Officer Domingo and Officer Chadderton. [J.A. 630-632; 635-651; 652-653; 668-673; 706-707] There have been Caucasian MTA officers

arrested who have not been dismissed. [J.A. 582]

Deputy Chief D'Agostino, as Commanding Officer of Internal Affairs, had knowledge of MTA police officer being arrested. [J.A. 701-703] One non-African American officer was arrested and convicted after being accused of using excessive force. He was not terminated. [J.A. 704-705]

There have been Caucasian MTA police officers caught sleeping on duty who have not been terminated. Sleeping on duty in the MTAPD is a serious matter. A police officer should be disciplined for sleeping on duty. [J.A. 673-674; 699] There are photographs of officers sleeping on duty. [J.A. 708-714] During the years that Deputy Chief D'Agostino was Commanding Officer of Internal Affairs, police officers were accused of sleeping on duty. None were terminated. [J.A. 699-700]

Caucasian police officers in the MTAPD have been involved in domestic incidents and not terminated. [J.A. 680-682] Deputy Chief D'Agostino could not recall any MTA police officer being terminated as a result of an allegation of domestic violence. [J.A. 700-701]

Appellant was not offered a last chance agreement, as other officers were, whereby the officer accepts a penalty and agrees that if there is any similar misconduct or serious misconduct within a stipulated time, he/she would be dismissed. [J.A. 698] Caucasian officers have been offered a last chance agreement.

-31-

[J.A. 697-698]

These components of the record are sufficient to meet Appellant's "minimal" burden with respect to his *prima facie* case.

The lower court then held, in the alternative, that even assuming such evidence was sufficient, that "[Appellant's] claim still fails because [Appellant's] purported comparators are not 'similarly situated' to him." [J.A. 790, S.A. 9] Appellant respectfully disagrees.

A leading case in the Second Circuit is <u>Graham v. Long Island R.R.</u>, 230 F.3d 34, 40 (2d Cir. 2000). In <u>Graham</u>, this Court concluded that "Whether two employees are similarly situated ordinarily presents a question of fact for the jury." <u>Id</u>. at 39. The court then reviewed the standard for deciding whether employees are similarly situated. The court elaborated upon its decision in <u>Shumay v. UPS, Inc.</u>, 199 F.3d 60, 63 (2d Cir. 1997). The court clarified what is meant by "comparator conduct." This Court held that an "employee's conduct may not be identical to that of another for the two to be similarly situated." <u>Id</u>. at 40. The court opined that the phrase "comparable seriousness" would suffice. <u>Id</u>. at 40. "Precise equivalence in culpability between employees is not the ultimate question," said the court. <u>Id</u>. "The standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparators' cases, rather than a showing that both

-32-

cases are identical," ruled the court in <u>Graham</u>.  <u>Id</u>.

Based upon the standards set forth in <u>Graham</u>, Appellant has sufficiently established issues of fact as to whether he was similarly situated to the comparators. Appellant can equate his overtime infraction with those of other officers who have not appeared for an overtime assignment or those who appeared late.  The violations all relate to overtime.  The result is the same – the Department became understaffed for a particular tour and someone lost an overtime opportunity.

The lower court's holding, with reference to those similarly situated to Appellant, with reference to the event that led to his termination, is also misplaced. The similarity of the conduct, *per se*, is not dispositive.  It is the seriousness of the conduct that is key.  Here, Appellant, by asserting that the comparators engaged in more egregious conduct but were not terminated, has properly compared himself to the comparators in question.

The relative disciplinary histories of the comparators is also not dispositive. As Appellant's Statement of Material Facts indicates, the recitation of Appellant's disciplinary history is taken out of context.  Many of the events were Letters of Instruction, which Appellee does not consider disciplinary action.  Many of the other cited "disciplines" were not even relied upon by Appellee in terminating Appellant. Appellant also notes that others had a disciplinary history.

Appellant also respectfully submits that the lower court's conclusion that Black officers may have also escaped discipline for overtime infractions should not be an important factor. The key is whether Appellee's actions against Appellant were motivated, at least in part, by his race.

The lower court, in its analysis, also failed to consider some of Appellant's additional proof of inference, such as his testimony on the legitimacy of Appellee's actions and Appellant's citation of certain remarks, which he contends, showed animus.

On the whole, Appellant submits that whether by comparator evidence or otherwise, he did sufficiently establish that the relevant events occurred under circumstances giving rise to an inference of race discrimination.

## B. The NYCHRL Law

The standards under the NYCHRL are more liberal. In 2005, the New York City Council passed the Local Civil Rights Restoration Act of 2005, amending the NYCHRL to "abolish parallelism between the [NYCHRL] and federal and state anti-discrimination law." Loeffler v. Staten Island University Hospital, 502 F.3d 268, 278 (2d Cir. 2009). Section 7 of the Restoration Act provides "The provisions of this [] title shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and

-34-

human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed." Claims under the NYCHRL "must be reviewed independently from and more liberally than their federal and state counterparts." Loeffler, supra. at 278. In order to set forth a *prima facie* case under the NYCHRL, Appellant need only show that he has been "treated less well ... because of his [protected basis], Mihalik v. Credit Agricole Cheuvreux North America, Incorporated, 715 F.3d 102, 110 (2d Cir. 2013).

Thus, in Mihalik, this Court held "[P]ursuant to these reasons, courts must analyze NYCHRL claims separately and independently from any federal and state law claims." Id. at 109. Indeed, "even if the challenged conduct is not actionable under federal and state law, federal courts must consider separately whether it is actionable under the broader New York City standards." Id.

Here, the lower court failed to sufficiently conduct the required independent analysis. It rejected the NYCHRL claim in one paragraph. [J.A. 791] Appellant respectfully asserts that this recitation is insufficient. As this Court held, in Velazco v. Columbus Citizens Foundation, 778 F.3d 409 (2d Cir. 2015), Appellant does not believe that the lower court "spoke with sufficient clarify" on the issue." Id. at 411.

### III. APPELLANT ESTABLISHED A PRIMA FACIE CASE OF RETALIATION

#### A. The Title VII and the NYSHRL Claims

Appellant's Second, Fourth and Sixth causes of action, respectively, alleges that Appellee unlawfully retaliated against him in violation of Title VII, the NYSHRL and the NYCHRL, respectively. More specifically, Appellant alleges that Appellee's decision to remove his summons-writing responsibility in March 2012, the issuance of the 2013 Notice of Intent to Discipline, and his ultimate termination serve as the basis of the retaliation claim.

Retaliation claims under Title VII and the NYSHRL are evaluated under the three-step burden-shifting analysis. Jute v. Hamilton Sundstrand Corp., 420 F.3d 166,1 73 (2d Cir. 2005); *see also* McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-805 (1973). First, a plaintiff must establish a *prima facie* case of retaliation by showing: (1) participation in a protected activity; (2) that defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. Jute, 420 F.3d at 173 (quoting McMenemy v. City of Rochester, 241 F.3d 279, 282-83 (2d Cir. 2001). Appellant's burden in this regard is "de minimis." Id.

If a plaintiff sustains this initial burden, "a presumption of retaliation arises."

Id. A defendant must then "articulate a legitimate, non-retaliatory reason for the adverse employment action." Id. If so, "the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action." Id.

The lower court dismissed the retaliation claim with respect to the summons-writing responsibility by concluding that Captain Kieran – the supervisor responsible for the complained of decision – "was not aware that [Appellant] had failed a charge of discrimination with the EEOC at the time he stripped [Appellant] of his ability to issue summonses." [J.A. 792, S.A. 11] Thus, the lower court held that Appellant cannot establish the knowledge requirement of his *prima facie* case with respect to this claim.

Appellant respectfully disagrees with the lower court's conclusion, both as to issues of fact and law. Firstly, as to the issue of fact, the record does establish issues of fact as to whether Captain Kieran had knowledge.

In his Charge of Discrimination, filed on or about January 11, 2012, Appellant alleged, *inter alia*, that on November 9, 2011 he received a "Command Discipline" because he had allegedly accepted two tours of overtime on the same day in different commands. [J.A. 63-64] In his Charge of Discrimination, filed on or about January 11, 2012, among others, Appellant named John D'Agostino, Deputy Chief - Support

Services, and Kevin Kieran, Captain, as individuals who had committed discrimination and a hostile work environment against him. [J.A. 63-64]

On or about January 10, 2012, Appellant also caused a Notice of Claim to be served pursuant to applicable statute, wherein he gave the MTA and others notice of his claim. [J.A. 566-573] Among others, Appellant directed the Notice of Claim to Deputy Chief D'Agostino and Captain Kieran. A copy of the Notice of Claim was mailed by certified mail, return receipt requested to Deputy Chief D'Agostino and Captain Kieran, both at the MTA, 347 Madison Avenue, New York, New York 10017. [J.A. 566-573] In this Notice of Claim, Appellant identified Deputy Chief D'Agostino and Captain Kieran as individuals who had discriminated against him and created a hostile work environment. [J.A. 566-573] These filings directed to Captain Kieran sufficed to put him on notice regarding Appellant's protected activity.

In any case, for purposes of summary judgment, actual notice of the protected activity is not required and is not a dispositive issue. In Patane v. Clark, 508 F.3d 106 (2d Cir. 2007) (per curiam), this Court held "neither this nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that plaintiff has engaged in a protected activity." Id. at 115 (quotation marks omitted). Rather, the knowledge element is satisfied when a plaintiff has "complained directly" to another employee "whose job it was to

-38-

investigate and resolve such complaints." <u>Patane</u>, 508 F.3d at 115; *see also* <u>Reed v.</u> <u>A.W. Lawrence & Co., Inc.</u>, 95 F.3d 1170, 1178 (2d Cir. 1996) ("By complaining to an officer of the company ... and maintaining her complaint during the subsequent internal investigation of the matter, the plaintiff was in effect communicating her concerns about Infantino's comments to Lawrence ....") Here, there is no dispute that Appellant did so.

This Court, in <u>Zann Kwan v. Andalex Group</u>, 737 F.3d 834 (2d Cir. 2013), confirmed that a showing of actual or official knowledge is not required in this situation. The court stated "[F]or purposes of a *prima facie* a plaintiff may rely on 'general corporate knowledge' of her protected activity to establish the knowledge prong of the *prima facie* case." *See also*, <u>Gordon v. NYC Board of Education</u>, 232 F.3d 111, 116 (2d Cir. 2000). A plaintiff's complaint to an officer of the company communicated her concerns to the company as a whole for purposes of the knowledge prong of the *prima facie* case held the court in <u>Reed v. A.W. Lawrence & Co., Inc.</u>, 95 F.3d 1170, 1178 (2d Cir. 1996).

The rationale for these conclusions is clear. As this Court noted in <u>Zann Kwan</u>, <u>supra</u>.,

> This case is a good illustration of why corporate knowledge is sufficient for purposes of a *prima facie* case of retaliation. If that were not true, a simple denial by a

corporate officer that the officer ever communicated the plaintiff's complaint, no matter how reasonable the inference of communication, would prevent the plaintiff from satisfying her *prima facie* case, despite the fact that the *prima facie* case requires only a de minimis showing.

Thus, Captain Kieran's denial of knowledge of the protected activity should not be dispositive.

The lower court then concluded that "assuming *arguendo* that [Appellant] has established a *prima facie* case of retaliation, his claim still fails because [Appellee] has adduced sufficient evidence of a legitimate, non-discriminatory reason for its actions that [Appellant] fails to show are pretextual." [J.A. 792, S.A. 11] The lower court states that Appellant relied upon "his subjective belief." [J.A. 793, S.A. 12]

Contrary to the lower court's holding, Appellant did sufficiently rebut Appellee's proffered reason for termination with evidence that such reason was pretextual or that the termination was also motivated, at least in part, by unlawful retaliatory animus. Raniola v. Bratton, 243 F.3 610, 625 (2d Cir. 2001) Upon a showing by the defendant of a legitimate, non-discriminatory reason for its actions, the burden shifts back to the plaintiff to show that the defendant's articulated reason is a pretext. An employee may establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."

-40-

Texas Dep't. of Community Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

In determining pretext, we can consider the evidence which makes up the *prima facie* case. Robinson v. Time Warner Inc., 92 F.Supp.2d 318, 330 (SDNY 2000). Pretext may also be demonstrated by "the presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence." Chambers, supra. at 38.

Appellant submits that there are contested facts as to whether Appellee established that it had non-discriminatory and non-pretextual reasons for its actions. Appellee asserts that it had legitimate reasons to issue the Command Discipline to Appellant concerning the overtime issue. Appellant disagrees and disputes Appellee's contention. Appellant readily admitted accepting two tours of overtime. However, he stated that it was unintentional. Even Lt. Pontorno acknowledged that punishment should only follow if the acceptance was intentional. Moreover, as we have already discussed, many other officers were not disciplined for engaging in overtime infractions with the same attendant result. The issue is not whether Appellant engaged in the conduct. It is whether discipline was justified. Here it was not.

The same result should follow with reference to the termination incident. The

-41-

record reveals that Appellant was not untruthful in connection with the IAB investigation. His testimony was consistent. Even the IAB Investigator acknowledged that Appellant consistently averred that he did not know that the memo book, which he properly placed in the gun locker, belonged to Sgt. Sokira. The fact that Sgt. Sokira failed to identify himself as the owner of the book compounded the situation. Appellee's conclusion that Appellant had to know the book belonged to Sgt. Sokira was speculation and not supported by any evidence.

The fact that the record contains sufficient evidence of a causal connection, including temporal connection and various comments, should also be a consideration. On March 12, 2012, Captain Kieran directed Lt. Yasso to remove Appellant's ability to issue summonses. This action occurred approximately two months after Appellant filed an EEOC Charge against Captain Kieran and others. It also occurred approximately two months after Appellant served Captain Kieran and others with a Notice of Claim. Under appropriate authority, two months is sufficient to establish a temporal connection. We must also remember that Appellant was told by Lt. Dittrich that there was a "target on [his] back."

There is also a causal connection between the June 17, 2013 Notice of Intent, which led to Appellant's termination, and his protected activity. Deputy Chief D'Agostino was the individual responsible for commencing the investigation and in

-42-

ultimately recommending that the Notice of Intent be brought. He also signed the termination letter. Deputy Chief D'Agostino was named in the Charges of Discrimination and in the Notices of Claim. We must also remember that Appellant's protected activity did not end the day he filed the Charges and Notices of Claim. It continued well after and was still going on when Deputy Chief D'Agostino issued the Notice of Intent in 2013. Appellant's disciplinary history also escalated after the protected activity began.

Appellant presented sufficient evidence to establish that Appellee's actions were pretextual. Appellant, in this vain, sufficiently established that Appellee's alleged legitimate reasons were not worthy of belief and were based upon speculation. Appellant has also shown that he was treated disparately.

### B.    The NYCHRL Retaliation Claim

The lower court addressed the NYCHRL claim in one footnote. [J.A. 791, S.A. 10] For reasons already discussed, Appellant submits that this footnote does not constitute the required independent analysis.

## <u>CONCLUSION</u>

Based upon all of the foregoing, Appellant respectfully submits the Judgment

under review should be reversed and the action remanded for further proceedings.

Dated:  Jericho, New York
        February 1, 2023

Respectfully submitted,
WOLIN & WOLIN

/s/ Alan E. Wolin
By: Alan E. Wolin, Esq.
Attorney for *Plaintiff-Appellant*
33 South Service Road, #189
Jericho, New York 11753
Telephone: (516) 938-1199
Facsimile: (516) 938-1178
E-Mail: wolinlaw@aol.com

-44-

## <u>Certificate of Compliance</u>

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    ☒   this brief contains 9,970 words, excluding the parts of the brief exempted by Fed. R. App. P. 32 (a)(7)(B)(iii), or

    ☐   this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32 (a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    ☒   this brief has been prepared in a proportionally spaced typeface using WordPerfect 12 in Times New Roman - 14 point, or

    ☐   this brief has been prepared in a monspaced typeface using _____ with _____.

/s/ Alan E. Wolin_____
Alan E. Wolin, Esq.
*Attorney for Plaintiff-Appellant*
Dated: February 1, 2023

-45-

# SPECIAL APPENDIX

## TABLE OF CONTENTS

Page

Memorandum Decision and Order, 9-26-22                    1

Judgment, 9-28-22                                        13

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WINSTON HENVILL,

                         Plaintiff,

        -against-

METROPOLITAN TRANSPORTATION
AUTHORITY,

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

<u>MEMORANDUM DECISION</u>
<u>AND ORDER</u>
13 Civ. 7501 (GBD)

GEORGE B. DANIELS, United States District Judge:

      Plaintiff Winston Henvill brings this action against his former employer, the Metropolitan

Transportation Authority (the "MTA"), for race-based discrimination and retaliation in violation

of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the New York

State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"), and the New York City

Administrative Code § 8-107.  (Second Amended Complaint ("SAC"), ECF No. 111.)  Plaintiff

alleges that Defendant discriminated against him by disciplining him in 2011 for his acceptance of

two tours of overtime in different commands on the same day and by terminating him in 2015.

(*Id.* ¶¶ 33–34.)  Plaintiff further alleges that Defendant retaliated against him after he filed two

Charges of Discrimination with the U.S. Equal Employment Opportunity Commission when

Defendant removed his summonses-issuing responsibilities in 2012 and terminated him.  (*Id.* ¶¶

34–44.)  As a result of Defendant's alleged course of action, Plaintiff seeks damages for economic

loss, physical and emotional injury, and past and continued harm to his reputation.  (*Id.* ¶¶ 45–80.)

      Before this Court is Defendant's motion for summary judgment pursuant to Federal Rule

of Civil Procedure 56, seeking dismissal of Plaintiff's claims.  (Notice of Motion, ECF No. 150.)

Defendant's motion is GRANTED.

## I.   BACKGROUND

### A.   Plaintiff's Disciplinary History

Plaintiff is an African-American man formerly employed by the Metropolitan Transportation Authority Police Department (the "MTAPD"), the Defendant's law enforcement arm. (Plaintiff's Response to Defendant's Statement of Undisputed Material Facts ("Pl.'s SOMF"), ECF No. 160, ¶¶ 1–2.) As detailed in the record, Plaintiff's fourteen-year employment with the MTAPD was rife with disciplinary problems: From 2001 to 2005, Plaintiff received four Letters of Instruction for various on-the-job infractions, including for missed traffic court appearances, leaving his assigned post without notice, and failing to include sufficient details in his memobook entries. (*Id.* ¶ 51(a)–(d).) In late 2008, Plaintiff was the subject of an investigation for failing to accurately document summonses he had written. (*Id.* ¶ 31(a).) On September 2, 2009, Plaintiff was assigned to desk duties and the heads of various commands were informed that Plaintiff was not to issue summonses without supervisor approval. (*Id.* ¶ 31(b).) A month later, in October 2009, Plaintiff received a Notice of Intent to Discipline for his failure to document and record vehicle and traffic law summonses. (*Id.* ¶ 31(c).) Next, on March 25, 2010, Plaintiff received another Notice of Intent to Discipline for his issuance of summonses without properly documenting them in his memo book and, while making traffic stops, failing to properly notify the Communications Unit. (*Id.* ¶ 31(d).) Also in 2010, Plaintiff was demoted to a base post because he had improperly issued moving violations, (*id.* ¶ 31(e)), and in 2011, Plaintiff received a Command Discipline for accepting two tours of overtime for the same date in different districts, which negatively affected the operations of the district at which he failed to show, (*id.* ¶¶ 24–28). Finally, in February 2012, Plaintiff inappropriately issued three summonses to a wheelchair-bound

2

individual and was separately reprimanded for failing to hand in summonses in a timely manner.
(*Id.* ¶ 31(f)–(g).)

Due to Plaintiff's progressive disciplinary history, most of which related to his issuance of
summonses, Plaintiff was advised that he could no longer issue summonses in March 2012. (Pl.'s
SOMF ¶ 31.)

**B.    Plaintiff's Subsequent Misconduct**

On April 19, 2013, Plaintiff took possession of the memo book of another officer, Sergeant
Sokira, and locked it in a gun locker.[1]   (Pl.'s SOMF ¶ 35.)   In connection with its investigation
into the whereabouts of Sokira's memobook, the MTA's Internal Affairs Bureau ("IAB") asked
Plaintiff if he had seen the memobook and Plaintiff reported that he had not.  (*Id.* ¶ 38.)  Plaintiff
also told Sokira a week after the incident that he had not seen the memobook.  (*Id.* ¶ 36.)  IAB
later recovered video footage capturing Plaintiff picking up Sokira's memo book and locking it
inside a wall-mounted gun locker.  (*Id.* ¶¶ 38–39.)  When confronted with the video footage,
Plaintiff admitted to his conduct.  (*Id.* ¶ 39.)

Following IAB's investigation, the MTA issued a Notice of Intent to Discipline to Plaintiff.
(June 17, 2013 Notice of Intent to Discipline, ECF No. 153–26.)   The matter was ultimately
submitted to arbitration before the American Arbitration Association ("AAA") pursuant to the
terms of the applicable Collective Bargaining Agreement between the MTA and the Police
Benevolent Association ("PBA").   (AAA Decision and Award, ECF No. 153–28.)   In those
proceedings, the arbitrator ruled that the evidence established that "[Plaintiff] took hold of the
memo book belonging to Sokira and locked inside a gun locker." (*Id.* at 11–12.) The arbitrator

---

[1] A memobook is a notebook provided to all MTAPD officers to record police activity, including traffic
stops and summonses, and is an important document often used in court and administrative hearings. (Pl.'s
SOMF ¶ 35.)

also found that Plaintiff lied when he told Sokira that he had not seen the memo book, as the evidence showed that Plaintiff opened the front cover of the memo book and "garnered sufficient information to know the identity of the owner." (*Id.* at 12.)  In addition, the arbitrator found that Plaintiff's statements to IAB were "inaccurate and false." (*Id.* at 13.)[2]  Based on these facts, the arbitrator determined that Plaintiff should be "terminated from his position." (*Id.* at 17.) Following the arbitrator's decision, Defendant terminated Plaintiff's employment on April 29, 2015.[3]  (Pl.'s SOMF ¶ 42.)

## C.   Plaintiff's Complaints of Discrimination and Retaliation

On January 11, 2012, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (the "EEOC") against the MTA alleging discrimination based on his race and color. (Pl.'s SOMF ¶ 3.)  Plaintiff filed a supplemental charge of discrimination on or about May 5, 2012, alleging retaliation in connection with the removal of his summonses-issuing responsibility. (*Id.* ¶¶ 5, 54).  Plaintiff filed the instant suit approximately a year later, on October 24, 2013. (Complaint, ECF No. 1.)

## II.   LEGAL STANDARD

Summary judgment is appropriate where the "movant shows that there is no genuine

---

[2] The arbitrator also found that Plaintiff had engaged in a slew of other misconduct, which was not minor. (*Id.* at 18.)  This conduct included (1) a "forty-eight (48) hour suspension for leaving a fellow officer unaccompanied on December 10, 2011 in violation of a supervisor's directive to remain with his partner throughout the shift"; (2) a ninety (90) hour suspension for accepting an overtime assignment on November 29, 2011 in violation of a Command Discipline by which his overtime polling was forfeited;" and (3) "a loss of twenty-four (24) hours of accrued time for failing to turn in summonses upon completion of his tours on February 20, 2012 [] and February 28, 2012." (*Id.* at 18.)

[3] On July 24, 2015, Plaintiff filed a Verified Petition in New York State Supreme Court against the MTA and the PBA seeking to vacate the arbitration Decision and Award that was issued on April 25, 2015. (Pl.'s SOMF ¶ 46.)  The MTA and the PBA successfully moved to dismiss. (*Id.* at ¶ 47.)  On November 1, 2016, Plaintiff filed an appeal of the order to dismiss. On March 9, 2017, the Supreme Court, Appellate Division, First Department, affirmed the order and stated that it perceived "no reason to overturn the imposed penalty of termination." (*Id.* at ¶ 48.)

4

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material when it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is genuine "if the evidence is such that a jury could return a verdict for the nonmoving party." *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson*, 477 U.S. at 248.)

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). In turn, to defeat a motion for summary judgment, the opposing party must raise a genuine issue of material fact. *See Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002). To do so, it "must do more than simply show that there is some metaphysical doubt as to the material facts," *id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), and it "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (*quoting Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). Rather, the opposing party must produce admissible evidence that supports its pleadings. *See First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289–90 (1968). In this regard, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

In determining whether a genuine issue of material fact exists, a court must construe the evidence in the light most favorable to the opposing party and draw all inferences in that party's favor. *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). However, to defeat a motion for summary judgment, the

nonmoving party must provide "hard evidence," *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d

Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC

v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted). "[S]ummary

judgment may be appropriate even in the fact intensive context of discrimination cases." *Abdu-

Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 465 (2d Cir. 2001).

### III.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON ALL CLAIMS

The Second Amended Complaint brings six causes of action under federal, state, and city

law for race discrimination and unlawful retaliation. (*See generally*, SAC.)  Summary judgment

is granted for Defendant on all claims.

### A.    Plaintiff Fails to Establish a Prima Facie Case of Race Discrimination

Plaintiff's First, Third, and Fifth Causes of Action allege that Defendant discriminated

against him on the basis of his race in violation of Title VII, the NYSHRL, and the NYCHRL.

Specifically, Plaintiff claims that Defendant discriminated against him by (1) issuing the

November 9, 2011 Command Discipline to him for accepting two tours of overtime in different

commands on the same day; and (2) issuing the June 7, 2013 Notice of Intent to Discipline to him

for being untruthful in connection with the IAB investigation (the "2013 NOI"), which ultimately

led to his termination in April of 2015. (Pl.'s SOMF ¶ 23.)

The Court reviews discrimination claims under Title VII and the New York State Human

Rights Law identically. *See Hyek v. Field Support Servs., Inc.*, 461 F. App'x. 59, 60 (2d Cir. 2012)

(claims brought under federal law and the NYSHRL "are analyzed identically").  Such claims

generally fall under the burden-shifting framework established in *McDonnell Douglas Corp. v.

Green*, 411 U.S. 792, 803–805 (1973). *See Lam v. Sephora USA Inc.*, 488 F. App'x. 487, 489 (2d

Cir. 2012); *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012).  Under *McDonnell

*Douglas*, a plaintiff establishes a prima facie cause of discrimination by showing that (1) he belonged to a protected class; (2) he was qualified for the position he occupied; (3) he was subject to an adverse employment action; and (4) the circumstances surrounding the adverse action give rise to an inference of discrimination. *Brown*, 673 F.3d at 150. Once the plaintiff makes such a showing, the burden shifts to the defendant to show a non-discriminatory reason for the action. *Lam*, 488 F. App'x. at 489 (citation omitted). If the defendant successfully makes such a showing, the burden shifts back to the plaintiff to show that the defendant's proffered reason is pretextual. *Id.* Conclusory allegations of discrimination are insufficient to show that a defendant's non-discriminatory reasons are pretexts. *See Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985); *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014) (citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010)).

The standard under the NYCHRL is more liberal. To establish a discrimination claim under the NYCHRL, the plaintiff need only show that the employer treated him less well, at least in part for a discriminatory reason. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013).

1.   **Discrimination Under Title VII and the NYSHRL**

Plaintiff's federal and state discrimination claims fail at the fourth step of the *McDonnell Douglas* analysis because Plaintiff has not raised any inference of discrimination as to either of his two alleged adverse employment actions. Inference of discrimination is a "flexible [standard] that can be satisfied differently in differing factual scenarios." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996). To support an inference of discriminatory intent, a Title VII plaintiff must allege facts supporting his claim that his "race, color, religion, sex, or national origin was a motivating factor in the employment decision" about which he complains. *Vega v. Hempstead*

7

*Union Free School Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). "[T]he 'ultimate issue' in an employment discrimination case is whether the plaintiff has met [his] burden of proving that the adverse employment decision was motivated at least in part by an 'impermissible reason,' *i.e.*, a discriminatory reason." *Id.* (quoting *Stratton v. Dep't for the Aging for N.Y.*, 132 F.3d 869, 878 (2d Cir. 1997)). A plaintiff may meet this burden either through direct evidence of intent to discriminate or "by indirectly showing circumstances giving rise to an inference of discrimination." *Id.*

Here, Plaintiff attempts to raise an inference of discrimination by comparing his treatment to that of other MTA employees. (Pl.'s Opp. to Def.'s Mot. for Summ. J. ("Opp."), ECF No. 162, at 10.) Showing "disparate treatment—that is, a showing that an employer treated plaintiff less favorably than a similarly situated employee outside [his] protected group" is one way of raising an inference of discrimination. *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010) (quotation omitted). A plaintiff attempting to prove discrimination through disparate treatment must show "that []he was similarly situated in all material respects to the individuals with whom []he seeks to compare [him]self." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (citation omitted). An employee is similarly situated to co-employees if they were (1) "subject to the same performance evaluation and discipline standards" and (2) "engaged in comparable conduct." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000).

Plaintiff has not made such a showing, either with respect to his 2011 Command Discipline or his 2013 NOI and termination. In his opposition, Plaintiff compares himself to two different groups of purportedly similarly situated coworkers: first, Plaintiff equates his overtime infraction with those of other officers who either failed to appear for an overtime shift or appeared late, (Opp. at 11); and second, with respect to his conduct during the IAB investigation, Plaintiff attempts to

draw similarities between his conduct and that of officers who have been involved in "domestic incidents" or caught sleeping on duty. (*See* Pl.'s SOMF ¶¶ 119–23.) As to both groups, Plaintiff presents no competent evidence showing the specific misconduct in which these alleged comparators were involved or the discipline they received. Instead, he simply relies on his own deposition testimony, which is based solely on his unsupported belief that these other employees were similarly situated to him and received less severe discipline. (*Id.* ¶¶ 73–76, 119–23 (citing Plaintiff's deposition testimony).) That testimony alone is insufficient to create a genuine issue of material fact. *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997) (evidence offered to establish that purported comparators are similarly situated cannot be based on "common knowledge".)

Assuming Plaintiff's testimony were enough, Plaintiff's claim still fails because Plaintiff's purported comparators are not "similarly situated" to him. Plaintiff's conduct of accepting two tours of overtime on the same day in different stations is qualitatively different to accidentally missing or arriving late to an overtime assignment. In any event, evidence adduced during discovery shows that the individuals identified by Plaintiff as having received no discipline after missing or arriving late to their overtime tours included both Black and Caucasian officers, (*see* Pl.'s SOMF ¶ 29), belying Plaintiff's contention that he was disciplined because he is Black. Nor can it be said that being untruthful during an Internal Affairs investigation is "comparable conduct" to falling asleep on the job or being involved in a domestic dispute outside of the workplace. Finally, with respect to either set of comparators, Plaintiff has not proven that his comparators have the same progressive disciplinary history as he does, rendering them different in yet another material respect. *See e.g., Saji v. Nassau Univ. Med. Ctr.*, 724 F. App'x 11, 18 (2d Cir. 2018) (affirming grant of summary judgment where plaintiff "put[] forward no concrete evidence" to

show comparator had same "sort of disciplinary history."). In short, Plaintiff has offered no competent evidence whatsoever to support his complaint's hypothesis that the reason behind Defendant's adverse employment decisions was his race. Plaintiff's bald allegation that that is the case, without more, is insufficient to sustain his claim at summary judgment. The Court therefore dismisses Plaintiff's First and Third Causes of Action.

### 2.     Discrimination Under the NYCHRL

Plaintiff's NYCHRL claims fare no better. As explained above regarding his Title VII and NYSHRL claims, Plaintiff fails to show that racial animus played any role in his 2011 Command Discipline or 2013 NOI and termination, or that he was ever treated less well because of his race. Plaintiff's Fifth Cause of Action is therefore also dismissed.

### B.     Plaintiff Fails to Establish a Prima Facie Case of Retaliation

Plaintiff's Second, Fourth, and Sixth Causes of Action allege that Defendants unlawfully retaliated against him after he filed discrimination charges with the EEOC in January and May 2012. To establish a prima facie case of retaliation under Title VII and the NYSHRL, a plaintiff-employee must show that (1) he engaged in protected activity; (2) the employer was aware of this activity; (3) the employer took adverse action against the employee;[4] and (4) a causal connection exists between the protected activity and the adverse action. *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013). "Once a prima facie case of retaliation is established, the burden of production shifts to the employer to demonstrate that a legitimate, nondiscriminatory reason existed for its action." *Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir.2001). If the employer

---

[4] The NYCHRL differs from Title VII and the NYSHRL with respect to the third showing. Rather than requiring a plaintiff to show an adverse employment action, the NYCHRL only requires action that was "reasonably likely to deter a person from engaging in protected activity." *Mestecky v. New York City Dep't of Educ.*, 791 F. App'x 236, 239 (2d Cir. 2019) (citation omitted). This distinction is immaterial to resolution of the instant motion.

demonstrates a legitimate, non-discriminatory reason, then "[t]he burden shifts ... back to the plaintiff to establish, through either direct or circumstantial evidence, that the employer's action was, in fact, motivated by discriminatory retaliation." *Id.*

The two adverse employment actions of which Plaintiff complains are Defendant's decisions to, first, remove Plaintiff's summonses-writing responsibilities on March 12, 2012; and 2) issue the 2013 NOI that ultimately led to Plaintiff's termination. (Pl.'s SOMF ¶ 23.) With respect to the summonses-related discipline, Defendant has submitted competent evidence in the form of a sworn affidavit by Captain Kieran—Plaintiff's supervisor responsible for the complained-of decision—that Kieran was not aware that Plaintiff had filed a charge of discrimination with the EEOC at the time he stripped Plaintiff of his ability to issue summonses. (*Id.* ¶ 34.) In opposition, Plaintiff incorrectly asserts that the record "establishes that Captain Kieran knew of Plaintiff's protected activity." (*See* Opp. at 15–16.) A review of the deposition testimony relied upon by Plaintiff to support this conclusion (his own) reveals that Plaintiff merely assumed that Kieran knew of his protected activity because Plaintiff believed that "everybody in Jamaica knew." (*See id.* ¶ 83.) Plaintiff's retaliation claim predicated on his 2012 discipline therefore fails at the causation prong of his prima facie case. *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 92 (2d Cir. 2011) ("lack of knowledge on the part of particular agents who carried out the adverse action is evidence of lack of causal connection").

As to Plaintiff's 2013 NOI and corresponding termination, assuming *arguendo* that Plaintiff has established a prima facie case of retaliation, his claims still fails because Defendant has adduced sufficient evidence of a legitimate, non-discriminatory reason for its actions that Plaintiff fails to show are pretextual. At oral argument, Plaintiff conceded that the issue whether Defendant had a legitimate, non-discriminatory reason to terminate him (his untruthfulness during

the IAB investigation) was decided against him during the 2015 arbitration and is thus barred by collateral estoppel. (*See* Tr. 29:12–15.) As Plaintiff correctly notes in his opposition, however, Plaintiff may rebut Defendant's proffered reason for termination with evidence that such reason was pretextual or that the termination was also motivated, at least in part, by unlawful retaliatory animus. *See Raniola*, 243 F.3d at 625. Plaintiff has made no such showing here. The only evidence Plaintiff offers in support of his theory that he was subject to retaliatory animus is his subjective belief, which is wholly speculative. Plaintiff's retaliation claims relating to his 2013 NOI and eventual termination are therefore also dismissed.

## IV.   CONCLUSION

Defendant's Motion for Summary Judgment, (ECF No. 150), is GRANTED. The Clerk of Court is directed to close the motion accordingly and to close this case.

Dated: September 26, 2022
       New York, New York                          SO ORDERED.

                                                   _George B. Daniels_
                                                   GEORGE B. DANIELS
                                                   United States District Judge

S.A. 12

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
WINSTON HENVILL,

                        Plaintiff,

      -against-                                13 **CIVIL** 7501 (GBD)

                                                   **<u>JUDGMENT</u>**

METROPOLITAN TRANSPORTATION
AUTHORITY,

                        Defendant.
------------------------------------------------------------X

        It is hereby **ORDERED, ADJUDGED AND DECREED:** That for the reasons

stated in the Court's Memorandum Decision and Order dated September 26, 2022, Defendant's

motion for summary judgment is GRANTED; accordingly, the case is closed.

**Dated:** New York, New York

      September 28, 2022

                                               **RUBY J. KRAJICK**

                                           _____
                                             **Clerk of Court**

               **BY:**       K. mango

                                             _____
                                           **Deputy Clerk**