# 22-2731

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

---

WINSTON HENVILL,

*Plaintiff-Appellant,*

- against -

METROPOLITAN TRANSPORTATION AUTHORITY,

*Defendant-Appellee.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

---

## REPLY BRIEF
## FOR PLAINTIFF-APPELLANT

---

WOLIN & WOLIN
By: Alan E. Wolin, Esq.
*Attorney for Plaintiff-Appellant*
33 South Service Road, #189
Jericho, New York 11753
Tel.: (516) 938-1199
Fax: (516) 938-1178
Email: wolinlaw@aol.com

# Table of Contents

|  | Page |
|---|---|
| Table of Authorities | ii |
| Defendant-Appellee's Statement of the Issues | 1 |
| Defendant-Appellee's Statement of the Case | 2 |
|     1. The Command Discipline for Accepting Two Tours of Overtime on the Same Day in Different Commands | 3 |
|     2. Removal of Plaintiff-Appellant's Summons-Writing Responsibility | 5 |
|     3. Plaintiff-Appellant's Termination | 5 |
| Defendant-Appellee's Argument | 7 |
| Conclusion | 11 |
| Certificate of Compliance | 12 |

# Table of Authorities

Page

Loeffler v. Staten Island University Hospital,
502 F.3d 268, 278 (2d Cir. 2009)                                  8

Mihalik v. Credit Agricole Cheuvreux North America, Incorporated,
715 F.3d 102, 110 (2d Cir. 2013)                                  9

Velazco v. Columbus Citizens Foundation,
778 F.3d 409 (2d Cir. 2015)                                       9

The following discussion is submitted as and for Plaintiff-Appellant's reply to Defendant-Appellee's brief.

### DEFENDANT-APPELLEE'S STATEMENT OF THE ISSUES

Defendant-Appellee, in its brief, posits three issues in its Statement of the Issues. Plaintiff-Appellant urges the Court to decide them as follows.

1. Plaintiff-Appellant did not fail to establish a *prima facie* case of race discrimination, under applicable statute, regarding (1) Defendant-Appellee's Command Disciplines of him for accepting two tours of overtime on the same day, and (2) Defendant-Appellee's disciplining and terminating him for the alleged reasons. On the contrary, Plaintiff-Appellant did submit compelling evidence of disparate treatment sufficient to raise an inference of discrimination based upon his race.

2. Assuming Plaintiff-Appellant did establish a *prima facie* case of race discrimination, his evidence was sufficient to permit a rational trier of fact to find that Defendant-Appellee's proffered "legitimate, non-discriminatory reasons" for disciplining and terminating Plaintiff-Appellant were false and pretextual.

3. Defendant-Appellee did not demonstrate its entitlement to summary judgment on Plaintiff-Appellant's retaliation claim, alleging the retaliatory removal of his summons-writing authority and his retaliatory termination for the reasons

alleged. On the contrary, Plaintiff-Appellant's evidence was sufficient to create a question as to a causal connection between plaintiff's protected activity and the actions alleged.

### **DEFENDANT-APPELLEE'S STATEMENT OF THE CASE**

Plaintiff-Appellant shall now discuss some references in Defendant-Appellee's Statement of the Case. Plaintiff-Appellant's retaliation claim is premised upon more than the two charges of discrimination that he filed in January 2012 and May 2012. As is stated in Plaintiff-Appellant's brief, his protected activity did not end the day he filed the charges of discrimination in 2012. For example, we must remember that Plaintiff-Appellant originally filed an action in District Court in October 2013. (JA 82-99) He filed a Notice of Appeal from the original dismissal of the District Court complaint in August 2014. (JA 152-159) On November 14, 2014, Plaintiff-Appellant appealed from the District Court's July 9, 2014 judgment, which resulted in this Court's Summary Order vacating, in part, the District Court's judgment and remanding the matter to the District Court. (JA 206-210) Plaintiff-Appellant's activity continued right up until his dismissal.

Plaintiff-Appellant also challenges the effort by Defendant-Appellee to make much ado over his "Pre-Termination Disciplinary History." Contrary to Defendant-Appellee's assertion, which adopted the lower court's observation, Plaintiff-

Appellant's career was not "rife with disciplinary matters." This "history" is taken out of context. Many of the events were Letters of Instruction, which Defendant-Appellee does not consider discipline. Many of the other cited "disciplines" were not even relied upon by Defendant-Appellee in terminating Plaintiff-Appellant and should not be considered a factor here.

Defendant-Appellee also distorts the record in stating that Plaintiff-Appellant did not dispute many of these "disciplines." In fact, Plaintiff-Appellant did. We must remember, however, that Plaintiff-Appellant's current case is limited to the claims that this Court permitted to continue in its Summary Order. (JA 206-210)

Defendant-Appellee then discusses its version of the facts of the three incidents before this Court.

> 1. **The Command Discipline for Accepting Two Tours of Overtime on the Same Day in Different Commands**

Plaintiff-Appellant continues to allege that he did not accept the two tours of overtime on the same day in different commands intentionally. (JA 583) When Plaintiff-Appellant accepted the second tour of overtime, he did not remember that he had accepted an earlier overtime assignment. (JA 585-586)

Although Defendant-Appellee attempts to undermine Plaintiff-Appellant's efforts to establish disparate treatment, Plaintiff-Appellant continues to assert that his

recitation was sufficient; especially since he was not permitted to delve into the disciplinary history of the alleged comparators by way of discovery.

Plaintiff-Appellant has sufficiently shown, through his own knowledge and other testimony, that specifically named Caucasian officers committed similar overtime infractions, including not appearing for an overtime assignment, doing an overtime assignment when not supposed to, taking overtime assignments when not eligible, or arriving late for an overtime assignment. (JA 590-591)

This disparate treatment was confirmed by Defendant-Appellee, as we saw. Lt. Dittrich knew of incidents where officers failed to appear for overtime assignments. He was not aware of any specific discipline related to it. (JA 673-679)

Here, Plaintiff-Appellant, under applicable standards, did sufficiently establish that he was treated disparately and there is sufficient evidence to establish a *prima facie* case.

Defendant-Appellee also attempts to debunk Plaintiff-Appellant's assertion that the consequences of the allegations involving Plaintiff-Appellant are analogous to not appearing for an overtime assignment. Its attempt must fail. The result is the same. The post is left not staffed and someone else is denied of the opportunity. (JA 593)

### 2. Removal of Plaintiff-Appellant's Summons-Writing Responsibility

In its recitation concerning this issue, Defendant-Appellee attempts to legitimize its actions by claiming that "This restriction was the culmination of a four year period wherein Plaintiff was disciplined or reprimanded multiple times for summons-related offenses." This effort to legitimize Defendant-Appellee's actions must fail. The reason that Plaintiff-Appellant was given for this action was merely that he had "misplaced one summons." (JA 612-616) Plaintiff-Appellant was not told that "his history related to summonses" was a factor. (JA 616) In fact, when Captain Kieran instructed Lt. Yasso to collect Plaintiff-Appellant's summonses, he did not indicate why he was instructing as such. (JA 612-613)

Defendant-Appellee failed to rebut Plaintiff-Appellant's assertion that there <u>were</u> other officers whose summons issuing responsibility was taken away. In fact, Lt. Yasso could not name any other officer whose ability to write summonses was removed. (JA 687)

Defendant-Appellee's attempt to assert that Captain Kieran did not have knowledge of Plaintiff-Appellant's protected activity must also fail. This issue was discussed in Plaintiff-Appellant's main brief.

### 3. Plaintiff-Appellants's Termination

Plaintiff-Appellant disputes certain portions of the MTA's narrative concerning

this issue. Lt. Pontorno, the Internal Affairs Investigating Officer, stated that Plaintiff-Appellant was interviewed twice. He stated that Plaintiff-Appellant's answers were consistent. (JA 661) Plaintiff-Appellant said, during the interviews, that he found a memo book in the room off the front desk; he did not know whose it was, he put the book in the gun locker, and he did not ascertain whose it was. He denied to Sgt. Sokira that he found the Sergeant's book. (JA661) <u>Plaintiff-Appellant never denied having taken possession of the memo book and placing it in the locker</u>. (JA 661-662) During the investigation, Plaintiff-Appellant stated that there were no identifying markings on the memo book as to ownership. (JA 663) According to procedure, the person whose book it is has to put his/her name on the front with Shield Number. (JA 663)

      Deputy Chief D'Agostino was present during the Internal Affairs interview of Appellant. According to Deputy Chief D'Agostino, Plaintiff-Appellant never denied taking possession of the memo book, which was situated on top of the gun locker. <u>He never denied placing the memo book in the locker and stated that he did so for safekeeping</u>. (JA 694)

      Defendant-Appellee then discusses the disparate treatment allegation with reference to Plaintiff-Appellant's termination. That discussion confirms that it is a rare occurrence for an MTA Police Officer to be terminated for disciplinary reasons.

(JA 667) Defendant-Appellee's narrative also confirms that Caucasian Police Officers have committed far more egregious acts than that which Plaintiff-Appellant was accused of and have not been terminated, including Caucasian officers who have been arrested and not dismissed. Defendant-Appellee's effort to assert that comparable disciplinary histories may not be similar should be of no avail. Not only is Plaintiff-Appellant's presentation sufficient to meet his minimal burden; but any assertion of non-comparability should be part of Defendant-Appellee's defense, not part of Plaintiff-Appellant's burden. In any case, many of the asserted acts by the Caucasian comparators were of sufficient gravity as to justify immediate termination, regardless of previous discipline histories.

Defendant-Appellee's assertion that the enumerated comparators are "ill fitting" should also be rejected. As the Plaintiff-Appellant's main brief asserts, the comparators are appropriately similarly situated.

### **DEFENDANT-APPELLEE'S ARGUMENT**

In its argument, Defendant-Appellee speaks of Plaintiff-Appellant's "egregious misconduct" as justifying his termination and removing any question as to its discriminatory or retaliatory motives. However, that assertion highlights just why summary judgment should be denied. If, Plaintiff-Appellant's conduct was so "egregious" as to justify termination, then why was the even more egregious conduct

of the cited comparators not sufficient to justify termination? That is a question that Defendant-Appellee cannot answer.

Plaintiff-Appellant reiterates his assertions in his main brief that he had relied upon more than "unreliable hearsay proof and ill-fitting comparators." Plaintiff-Appellant has also submitted sufficient evidence to raise a jury question as to whether Defendant-Appellee's articulated reasons for its actions were pretextual.

Plaintiff-Appellant also reiterates his arguments that he sufficiently showed a causal connection between his protected activity and his discipline and his termination. As noted, Plaintiff-Appellant's protected activity consisted of more than his two charge of discrimination filings and, contrary to Defendant-Appellee's claim, he relies upon more than temporal proximity to establish his retaliation claim.

Plaintiff-Appellant also takes issue with Defendant-Appellee's claim that he "failed to make any substantive arguments in his Brief as to why [the NYCHRL] claims were incorrectly dismissed, and, therefore, he has abandoned them." Plaintiff-Appellant's main brief clearly discussed the NYCHRL claim and that it was erroneously dismissed. In fact, at pages 34-35, Plaintiff-Appellant discussed the more liberal standards under the NYCHRL and that such claims are to "be reviewed independently from and more liberally than his federal and state counterparts. <u>Loeffler v. Staten Island University Hospital</u>, 502 F.3d 268, 278 (2d Cir. 2009).

Under the NYCHRL, Plaintiff-Appellant argued that he need only show that he has been "treated less well ... because of his [protected basis]. <u>Mihalik v. Credit Agricole Cheuvreux North America, Incorporated</u>, 715 F.3d 102, 110 (2d Cir. 2013).

Plaintiff-Appellant, in his discussion, did argue why the NYCHRL claims were improperly dismissed. He stated, at page 34:

> Here, the lower court failed to sufficiently conduct the required independent analysis. It rejected the NYCHRL claim in one paragraph. [J.A. 791] Appellant respectfully asserts that this recitation is insufficient. As this Court held, in <u>Velazco v. Columbus Citizens Foundation</u>, 778 F.3d 409 (2d Cir. 2015), Appellant does not believe that the lower court "spoke with sufficient clarify" on the issue." <u>Id</u>. at 411.

Plaintiff-Appellant also addressed, at page 43, the lower court's treatment of the NYCHRL claim with respect to retaliation. Plaintiff-Appellant could not address the lower court's dismissal in any more detail because the lower court failed to undertake any independent analysis. For purposes of Plaintiff-Appellant's brief obviously he believed that, had the lower court conducted such an analysis, it should have been in his favor. In fact, at page 34 of its brief, Defendant-Appellee acknowledges that "Plaintiff offers several arguments on appeal to challenge the district court's dismissal of his race discrimination claims under Title VII, NYSHRL and NYCHRL." Thus, Defendant-Appellee's assertion that Plaintiff-Appellant "abandoned" the

NYCHRL claim is disingenuous.

Defendant-Appellee goes to great lengths to assert that Plaintiff-Appellant has not sufficiently met his minimal *prima facie* burden on his race claim because he failed to show that the cited comparators were similarly situated. Plaintiff-Appellant refutes this argument and relies upon his main brief with reference thereto.

Without repeating his arguments in this brief, Plaintiff-Appellant also disputes Defendant-Appellee's assertion that, with respect to the relevant events, it acted for legitimate, non-discriminatory reasons and that Plaintiff-Appellant failed to make any showing of pretext.

Finally, with respect to the NYCHRL claim, Plaintiff-Appellant, contrary to Defendant-Appellee's assertion, did produce evidence that he was "treated less well" because of his race. Plaintiff-Appellant's disparate treatment assertions certainly would tend to establish that he was "treated less well" than his similarly situated Caucasian counterparts.

Plaintiff-Appellant will also rely upon his main brief to counter Defendant-Appellee's argument that the retaliation claims were properly dismissed. Plaintiff-Appellant did establish the required causal connection and that the actions in issue would not have occurred but for Plaintiff-Appellant's protected activity. Plaintiff-Appellant submits that he asserted more than temporal proximity to support his case

and that his protected activity, in any case, did establish a temporal proximity; notwithstanding Defendant-Appellee's claim that, with reference to the summons-writing issue, Captain Kieran did not have requisite knowledge. For similar reasons, Plaintiff-Appellant continues to assert that he sufficiently established a retaliation claim under the NYCHRL.

## **CONCLUSION**

Based upon all of the foregoing, Plaintiff-Appellant continues to asserts that the Judgment under review should be reversed and the action remanded for further proceedings.

Dated: Jericho, New York
       May 19, 2023

                                        Respectfully submitted,
                                        WOLIN & WOLIN

                                        *Alan E. Wolin*
                                        By: Alan E. Wolin, Esq.
                                        Attorney for *Plaintiff-Appellant*
                                        33 South Service Road, #189
                                        Jericho, New York 11753
                                        Telephone: (516) 938-1199
                                        Facsimile: (516) 938-1178
                                        E-Mail: wolinlaw@aol.com

**Certificate of Compliance**

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    ☒ this brief contains 2,378 words, excluding the parts of the brief exempted by Fed. R. App. P. 32 (a)(7)(B)(iii), or

    ☐ this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32 (a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    ☒ this brief has been prepared in a proportionally spaced typeface using WordPerfect 12 in Times New Roman - 14 point, or

    ☐ this brief has been prepared in a monspaced typeface using _____ with _____.

*Alan E. Wolin*
Alan E. Wolin, Esq.
*Attorney for Plaintiff-Appellant*
Dated: May 19, 2023